Chad S. Caby, Wyo. Reg. No. 7-5457
LEWIS ROCA ROTHGERBER CHRISTIE LLP
1200 17th Street, Suite 3000
Denver, CO 80202-5855
Tel:     303.628.9583
Fax:     303.623.9222
Email:   ccaby@lrrc.com

*Attorneys for Central Bank & Trust*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-20171 |
| MERRILL JOHN HULL, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

## MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b) FILED BY CENTRAL BANK & TRUST

Central Bank & Trust ("CB&T"), by and through its undersigned attorneys, Lewis Roca Rothgerber Christie LLP, hereby files its Motion to Convert Chapter 11 Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b) (the "Motion"). In support of its Motion, CB&T states as follows:

### INTRODUCTION

CB&T is owed approximately $1.5 million by John Hull (the "Debtor"). Since filing his individual case on March 22, 2018, the Debtor has "parked" his case in this Court taking almost no action. Indeed, no disclosure statement or plan have been filed and the Debtor's exclusivity period expired on July 19, 2018. Based on untimely and incomplete Monthly Operating Reports for May, June and July of 2018, the Debtor has negative net income, negative cash profit, and future monthly projections show that expenses will continue to exceed income. Recently at an evidentiary hearing in the Debtor's companion case, John Hull Trucking, LLC ("JHT"),

Bankruptcy Case No. 18-20494 (the "JHT Case"), the Debtor testified that he individually owes taxes for 2016 and 2017 estimated at approximately $400,000 and that notwithstanding this tax liability, he has not paid any postpetition tax or quarterly payments to the Internal Revenue Service ("IRS") for 2018. The Debtor further testified that he has commingled expenses between the JHT Case and his individual case and paid those expenses from the debtor-in-possession account of JHT. Furthermore, both the Debtor's individual case and the JHT Case appear to be administratively insolvent. Accordingly, based on the foregoing, as well as other arguments set forth below, CB&T requests the Court convert the Debtor's case to Chapter 7 where an independent Chapter 7 trustee can liquidate the Debtor's assets and pay creditors.

## PROCEDURAL BACKGROUND

1.  This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), as it is a matter concerning the administration of a debtor's estate.

**A.     Loan and Guaranty History**

2.  On October 29, 2015, JV Lumber, LLC ("JV Lumber"), another entity owned by John Hull, executed and delivered to CB&T a Promissory Note in the original principal amount of $400,000 (the "JV Lumber Note"). The JV Lumber Note was later modified on November 1, 2016 (the "Change in Terms Agreement"). Copies of the JV Lumber Note and Change in Terms Agreement are attached and incorporated herein as **Exhibit 1**. On or about the same date, the Debtor and JHT each executed a Commercial Guaranty, thereby guaranteeing the debt of JV Lumber. Copies of each of the Commercial Guaranties are attached and incorporated herein as **Exhibits 2 and 3.**

3.     Thereafter, on June 15, 2016, JV Lumber executed and delivered to CB&T a Promissory Note in the original principal amount of $945,500 (the "Second JV Lumber Note"). The Second JV Lumber Note was later modified on March 10, 2017 (the "Second Change in Terms Agreement"). The Second JV Lumber Note and Second Change in Terms Agreement are attached and incorporated herein as **Exhibit 4.** The Second JV Lumber Note was secured by a Mortgage executed by John Hull and Victoria Hull and recorded in the real property records of Washakie County, Wyoming on June 17, 2016, at Reception No. 0572456 Bk: 145, Pg: 1696. A copy of the Mortgage is attached and incorporated herein as **Exhibit 5.** On or about the same date, the Debtor and JHT each executed a Commercial Guaranty, thereby again guaranteeing the debt under the Second JV Lumber Note. Copies of the Commercial Guaranties are attached and incorporated herein as **Exhibits 6 and 7.**

4.     Despite demand by CB&T, JV Lumber failed to pay amounts due and owing under the JV Lumber Note and Second JV Lumber Note. Accordingly, CB&T initiated collection efforts against JV Lumber, JHT and the Debtor.

**B.     Judgment and Issuance of Writs of Garnishment Against JHT**

5.     As a result of JV Lumber's default and the Commercial Guaranty of the indebtedness under the JV Lumber Note executed by both JHT and the Debtor, CB&T filed its Complaint against JV Lumber, JHT and the Debtor seeking appropriate relief. A copy of the Complaint and Summons are attached as **Exhibit 8.** Immediately prior to the answer date, the Debtor filed his individual bankruptcy case.

6.     Thereafter, on April 19, 2018, CB&T sought and received a default judgment against JV Lumber and JHT (the "Default Judgment"). A copy of the Default Judgment is attached and incorporated herein as **Exhibit 9.** The Default Judgment indicates that JV Lumber

and JHT owe CB&T not less than $440,730.42 as of April 18, 2018. *See* Exhibit 9 and Proof of Claim No. 3-1.

7.      In addition, the Debtor owes CB&T monies related to the Second JV Lumber Note. As set forth in Proof of Claim No. 4-1, the Debtor owes CB&T $934,451.60 as of the date of the Debtor's bankruptcy filing. *See* Proof of Claim No. 4-1. The total amount owed to CB&T under the JV Lumber Note (and Default Judgment) and the Second JV Lumber Note is not less than $1,377,880.90.

8.      On May 16, 2018, CB&T caused two writs of garnishment to be issued on: (i) Big Horn Federal Credit Union ("Big Horn"); and (ii) Saddleback Trucking, LLC ("Saddleback") (together, the "Writs"). Copies of the Writs for Saddleback and Big Horn are attached and incorporated herein as **Exhibits 10** and **11**, respectively. The Writs were separately answered by each garnishee, indicating that Big Horn was holding approximately $21,000 in the a JHT bank account and that Saddleback was paying the Debtor and/or JHT approximately $7,000 per month related to an Asset Purchase Agreement entered into between Saddleback and the Debtor on February 1, 2016 (the "APA"). A copy of the APA is attached and incorporated herein as **Exhibit 12.**

9.      The APA provides, in relevant part, the following arrangements:

(a)     The JHT would sell trucks and related equipment to Saddleback for $1,050,000.

(b)     A down payment of $250,000 was payable at closing, and thereafter the balance of the amount due and owing would be paid in equal monthly installments of $13,333.37 commencing on March 1, 2016.

(c) Saddleback entered into a promissory note for the remainder of the indebtedness which was secured by a Security Agreement executed by both parties.

*See APA*, p. 1.

10.    The APA, promissory note and the security agreement entered into between JHT and Saddleback were not initially disclosed in JHT's Statement of Financial Affairs and Schedules. In addition, although the debt under the APA is owed to JHT, the Debtor erroneously claims the same as personal income in his individual case. *See* Schedule I.

**C.    The Chapter 11 Filings of the Debtor and JHT**

11.    Upon the filing of the Complaint, and at or near the time an answer was due, the Debtor sought relief under Chapter 11 of the Bankruptcy Code. Similarly, upon the garnishment of JHT, the Debtor caused JHT to file its own bankruptcy case on June 18, 2018.

12.    On July 17, 2018, the United States Trustee convened the Debtor's Section 341(a) Meeting of Creditors (the "Creditors' Meeting"). At the Creditors' Meeting, John Hull testified to the following:

(a)    The precipitating factor for the Debtor's bankruptcy filing was the debt owed to CB&T;

(i)    All of the unsecured debt listed in the Debtor's Schedule F is owed by JV Lumber and not the Debtor;

(b)    Income listed on the Debtor's Schedule I associated with the sale of a separate trucking equipment is actually owed to JHT and not the Debtor.

Accordingly, income in the amount of $6,240 listed on Schedule I for "sale of trucking company" is not the Debtor's income;

(c)     The Debtor's monthly income is significantly less than the $6,500 listed on Schedule I and is more likely to be $3,000 per month;

(d)     The Debtor has a lease with Chopper Cross-Fit, but failed to disclose the same, including the $1,500 monthly rental income;

(e)     The Debtor intends to sell a five acre property located in Douglas, Wyoming, the proceeds of which will be paid to creditors.

13.     On May 18, 2018, this Court entered an Order granting CB&T relief from the automatic stay with regard to the Debtor's most significant piece of property. *See* Docket No. 34.

## REQUESTED RELIEF

14.     By and through this Motion, CB&T seeks the conversion of the Debtor's Chapter 11 case to Chapter 7 pursuant to 11 U.S.C. § 1112(b) based on: (i) bad faith; (ii) the Debtor's bankruptcy filing is a result of a two-party dispute; (iii) the Debtor has no reasonable prospect of effectuating a plan of reorganization (including the fact that the Debtor has not filed a plan and disclosure statement); (iv) a substantial or continuing loss to or diminution of the estate and lack of any reasonable likelihood of rehabilitation; (v) the Debtor's failure to timely file tax returns and pay postpetition taxes; an unexcused failure to satisfy timely filing or reporting requirements; and (vi) gross mismanagement of the estate; (including the Debtor's commingling of expenses with JHT and the payment of those expenses out of the JHT debtor in possession deposit account). The Debtor's bankruptcy case (as well as JHT's Chapter 11 case) was filed for

the sole purpose of delaying CB&T's exercise of its state law rights and remedies, including staying the state court action. There is no other purpose for the filing, as the Debtor has no unsecured creditors other than CB&T and remains current with each of his secured creditors.

## DISCUSSION

### A.    Conversion for Bad Faith Filing

15.    Conversion of a debtor's Chapter 11 case is governed by 11 U.S.C. § 1112(b), which states, in relevant part:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes *cause*.

11 U.S.C. § 1112(b)(1) (emphasis added).

16.    "Cause" for conversion or dismissal is intended to be illustrative and not exclusive. *See, e.g., In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) and *In re SB Prop. Inc.*, 185 B.R. 206, 208 (Bankr. E.D. Pa. 1995). In accordance with case law,

> Dismissal or conversion of a chapter 11 case under 11 U.S.C. § 1112(b) is a two step process. First, the Court must determine if "cause" exists for dismissal or conversion of the chapter 11 case. Next, the Court must determine whether dismissal or conversion of the case is in the best interest of creditors and the estate.

*In re OptinRealBig.com, LLC*, 345 B.R. 277, 282 (Bankr. D. Colo. 2006) (internal citations omitted). *In re Vincens*, 2008 WL 58246, *1 (B.A.P. 10th Cir. Jan. 4, 2008) (Once "cause" is found under 11 U.S.C. § 1112(b), the Court must determine whether dismissal or conversion is in the "best interests of creditors and the estate."). The standard for choosing conversion or dismissal based on "the best interest of creditors and the estate" implies a balancing test to be

applied through case-by-case analysis. *In re OptinRealBig.com, LLC*, 345 B.R. at 290. The element of the best interest of creditors requires the Court to consider which alternative would be most advantageous to the parties and the element that is focused on is whether the economic value of the estate is greater inside or outside of bankruptcy. *Id.*[1]

    17.    The term "cause" includes, but is not limited to, those enumerated factors set forth in 11 U.S.C. § 1112(b)(4).[2] In addition, courts in the Tenth Circuit have recognized that bad faith is an independent ground constituting cause for dismissal or conversion of a debtor's Chapter 11 case. *See In re Pacific Rim Invs., LLP*, 243 B.R. 768, 772 (D. Colo. 2000); *cf. In re Nursery Land Dev., Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1996) (upholding a bankruptcy court's

---

[1] The authors of the treatise COLLIER ON BANKRUPTCY suggest that, where parties disagree on conversion or dismissal, the court must determine which alternative is appropriate, considering the following factors:

> (1) whether some creditors received preferential payments, whether equality of distribution would be better served by conversion rather than dismissal; (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted; (3) whether the debtor would simply file a further case upon dismissal; (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise; (6) whether any remaining issues would be better resolved outside the bankruptcy forum; (7) whether the estate consists of a "single asset"; (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (9) whether a plan has been confirmed and whether any property remains in the estate to be administered; and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*See* 7 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 1112.04(6) (16 ed. Rev. 2009). CB&T asserts that many of the above factors weigh in favor of conversion of this case.

[2] For purposes of 11 U.S.C. § 1112(b)(4), the term 'cause' includes, but is not limited to, "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (D) unauthorized use of cash collateral substantially harmful to one or more creditors; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by Debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of title 28; (L) revocation of an order of confirmation under section 1144; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by Debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of Debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition."

decision to grant relief from stay based on Debtor's bad faith filing); *see also In re Gunnison Ctr. Apartments, LP*, 320 B.R. 391, 320 B.R. at 399 n. 9 (Bankr. D. Colo. 2005) (same).

18.     The Fifth Circuit Court of Appeals has aptly summarized what constitutes a bad faith filing:

> Determining whether Debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of Debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist. Debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and Debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, Debtor and one creditor may have proceeded to a stand-still in state court litigation, and Debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by Debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.
>
> Resort to the protection of the bankruptcy laws is not proper under these circumstances, because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to Debtor's terminal euphoria.

*Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986) (footnotes and quotations omitted).

19.     The Tenth Circuit has similarly set forth "indicia that constitute classic badges of a bad faith bankruptcy filing," including instances in which a debtor has: (1) one asset; (2) only one creditor; (3) acquired property which was posted by foreclosure and the prior owners had

been unsuccessful in defending the foreclosure; (4) been revitalized on the eve of foreclosure to acquire the insolvent property; (5) no ongoing business or employees; (6) lacks a reasonable possibility of reorganization; and (7) the Chapter 11 filing stopped a foreclosure. *In re Nursery Land*, 91 F.3d at 1416.

20.    The factors set forth in *Little Creek* and *Nursery Land* are not exhaustive, and a court may consider other factors demonstrating a debtor's bad faith. *In re Gunnison*, 320 B.R. at 400. Moreover, "[b]ad faith is found when the cumulative effect of [the] individual factors together paint a factual picture that leads to the inescapable conclusion that use of the bankruptcy laws by Debtor is inappropriate." *In re Gunnison*, 320 B.R. at 400 (*citing In re Plumberex Specialty Prod. Inc.*, 311 B.R. 551, 560 (Bankr. C.D. Cal. 2004); *In re Kasdorf*, 64 B.R. 294, 295 (Bankr. D. Colo. 1986)). Under 11 U.S.C. § 1112(b), a bankruptcy court has broad discretion to convert a Chapter 11 case to a Chapter 7 proceeding or to dismiss a case for cause. *In re Preferred Door Co., Inc.*, 990 F.2d 547, 549 (10th Cir. 1993).

21.    In this case, CB&T asserts the following factors demonstrate the Debtor's bad faith:

(a)    The Debtor filed his bankruptcy case on the eve of being required to respond to CB&T's Complaint, similar to filing the JHT Case upon the successful entry of the Writs;

(b)    The Debtor has no unsecured creditors other than CB&T. Although the Debtor's Schedule F lists 15 unsecured creditors owed approximately $50,000, testimony from Mr. Hull at the Creditors' Meeting indicates that all debts listed on Schedule F are actually owed by JV Lumber and not Mr. Hull individually. The Debtor's testimony at

his Creditor's Meeting is corroborated by the Claims Register in this case which only shows three unsecured non-priority claims filed in this case.

(c)     The Debtor has but one significant secured creditor . . . CB&T. Otherwise, the Debtor's Schedules disclose the following other debts:

| B&B Leasing, Inc. | Gas Trailers | $118,500 | Schedule D |
|---|---|---|---|
| Big Horn Fed. C.U. | Residence | $91,846.87 | Schedule D |
| Big Horn Fed. C.U. | Residence | $153,236.66 | Schedule D |
| Pinnacle Bank | Truck/Retail Inventory | $140,000 | Schedule D |
| Internal Revenue Service | Taxes | $168,043 | Schedule E |

As explained in greater detail below, Debtor's bankruptcy filing largely, if not exclusively, is because of CB&T's filing of the Complaint. The above-captioned case revolves around what can best be described as a two-party dispute.

(d)     The Debtor does not have the wherewithal to reorganize. The Debtor testified that JHT lost money in 2016 and continued its downward spiral during tax year 2017. Notwithstanding the Debtor's projections, it is likely the Debtor will fare no better in 2018. Instead, the Debtor filed its bankruptcy solely to take advantage of the automatic stay to attempt to avoid the significant debt he owes CB&T.

(e)     The Debtor has no employees other than its principal, John Hull. Thus, there are no employees to protect.

(f)     The Debtor has little to no cash flow and no available source of income he may use to satisfy CB&T's debt through a plan of reorganization. At the Creditors' Meeting of JHT, Mr. Hull testified that, after all business expenses were paid, only

$1,929.66 remained which he would take as a draw for monthly living expenses in his individual Chapter 11 case.

(g)     The timing of Debtor's and JHT's bankruptcy cases are more than coincidental and suggest circumstantial evidence of Debtor's improper intent to frustrate CB&T's efforts to enforce its state law rights, including the collection of monies CB&T is owed by the Debtor.

22.     Simply put, the Debtor's bankruptcy case is the quintessential bad faith case.  The bankruptcy case was filed for the sole purpose of frustrating CB&T's state law rights and remedies.  Based on the foregoing, CB&T asserts that "cause" exists for the conversion of the above-captioned Chapter 11 case based on the Debtor's bad faith.  Furthermore, conversion is in the best interests of creditors and this estate, because CB&T is the Debtor's only significant unsecured creditor.

**B.     The Debtor's Bankruptcy Filing is the Result of a Two-Party Dispute in Wyoming State Court**

23.     Another factor "indicating bad faith is whether the bankruptcy case was primarily filed to confer federal jurisdiction on what would otherwise be a two-party dispute involving issues of state law." *In re Local Union 722 Int'l. Bhd. of Teamsters*, 414 B.R. 443, 448 (Bankr. N.D. Ill. 2009) (citing *In re Liptak*, 304 B.R. 820, 832 (Bankr. N.D. Ill. 2004); *In re Paolini*, 312 B.R. 295, 307 (Bankr. E.D. Va. 2004)).  Moreover, a "debtor's attempt to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute strongly supports a finding of cause for dismissal." *In re Starmark Clinics, LP*, 388 B.R. 729 (S.D. Tex. 2008); *see also In re Shar*, 253 B.R. 621 (Bankr. D. N.J. 1999) (generally, where a debtor's reorganization

efforts revolve around a two-party dispute that can be addressed in state court, dismissal for cause is warranted).

24.     Under similar circumstances to the Debtor's case, where a debtor's major creditor was owed approximately 96% of the total debt disclosed in the case, the Court determined the case was "essentially, a two-party dispute where the rights of those parties were adequately accommodated by nonbankruptcy law." *In re Erkins*, 253 B.R. 470, 476 (Bankr. D. Idaho 2000). The *Erkins* Court further held that "Debtors' case is not the kind Congress intended have access to the rehabilitative provisions of Chapter 11." *Id.* at 477.

25.     In this case, CB&T holds almost 100% of the unsecured debt associated with the Debtor's bankruptcy case. *See Erkins*, 253 B.R. at 476; *see also Bhd. of Teamsters*, 414 B.R at 449 (where a claim represents approximately 78% of a debtor's unsecured debt, that factor favors a finding that the Chapter 11 case was a two-party dispute and weighed in favor of dismissal of the case).

26.     The filing of the Bankruptcy Case is the Debtor's attempt to transfer a two-party dispute to federal bankruptcy court and to obtain the benefit of the automatic stay.   This matter should be converted as it is an abuse of the provisions of the Bankruptcy Code.

**C.     The Debtor Has No Reasonable Prospect of Effectuating a Plan of Reorganization**

27.     In this case, the Debtor has no reasonable prospect of effectuating a plan of reorganization:

> Despite the removal of [] language in 2005, courts continue to hold that inability to effectuate a plan is cause for dismissal [or conversion]. *See In re Brooks*, 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013) ("a debtor's inability to accomplish substantive progress toward confirmation inherently carries the risk of unreasonable and undue delay, which is nearly always prejudicial toward creditors, and which is adequate justification, in and of itself for dismissal of a Chapter 11 case for cause."); *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y.

2011) (inability to effectuate a plan is also "cause" for dismissal); *In re Wahlie*, 417 B.R. 8, 12 (Bankr. N.D. Ohio 2009) (whether the debtor will be able to have a Chapter 11 plan of reorganization confirmed is a useful indicator of whether cause for dismissal (or conversion) exists).

*In re Milasinovich*, 2014 WL 1419558 (Bankr. D.N.M. Apr. 11, 2014). This Court has similarly concluded that the inability to effectuate a plan is grounds for dismissal or conversion:

> Under Section 1112(b)(2), the bankruptcy court may dismiss or convert a Chapter 11 case if the debtor is unable to effectuate a plan, which means that the debtor lacks the ability to formulate a plan or to carry one out. Dismissal for inability to effectuate a Chapter 11 plan is appropriate where a debtor's failure to produce an acceptable plan, after a reasonable time, indicates its inability to do so, whether the reason for the inability is its poor financial condition, structure of claims against it, or some other reason.

*In re Western States, Inc.*, 2018 WL 627465 *6 (Bankr. D. Wyo. Jan. 30, 2018).

- *The Debtor Has Not Filed a Plan and Disclosure Statement*

The Debtor has "parked" his bankruptcy case in this court showing little to no progress. The Debtor's exclusivity period expired on July 19, 2018 and no extension was requested. Indeed, the only progress the Debtor has made in the approximate 6 months since filing his bankruptcy case is obtaining an order from this Court that will allow him to sell certain real property located in Douglas, Wyoming. Otherwise, the Debtor has taken no steps to push his case forward, including the filing a plan and disclosure statement. *See generally In re Vincens*, 287 Fed. Appx. 686, 688 (10th Cir. 2008) ("failure to propose a feasible plan based on objective fact, together with failure to move the case forward in any other way constitutes cause under § 1112(b)). Debtor has been in Chapter 11 for nearly 11 months. No progress toward reorganization has been made during that time. There is no reason to believe the Debtor could reorganize given more time"); *Cf. In re Preferred Door Co., Inc.*, 990 F.2d 547, 549 (10th Cir. 1993) ("Dismissal under § 1112(b)(2) is appropriate where the debtor's failure to file an

acceptable plan after a reasonable time indicates its inability to do so whether the reason for the debtor's inability to file is its poor financial condition, the structure of the claims against it, or some other reason."). The Debtor has had sufficient time to propose a plan of reorganization that will pay creditors. However, no plan has been filed and no extension of the exclusivity period was requested. *See, e.g., In re Photo Promotion Associates, Inc.*, 47 B.R. 454, 459 (S.D.N.Y. 1985) ("The debtor is now in its sixth month of post-petition operations and has neither filed a plan of reorganization nor is it in any position to do so in the near future. Apart from continuing to sustain substantial post-petition losses to the detriment of its creditors, the debtor has insufficient capital or assets to support the promulgation of any plan of reorganization."). Cause exists to convert the Debtor's case to Chapter 7 because the Debtor has not and will not be able to propose a feasible plan of reorganization.

**D.      Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation**

28.      As set forth in this Court's opinion in *In re Western States, Inc.*:

> Section 1112(b)(1) provides that a bankruptcy court may convert or dismiss a case when there is continuing loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation. The two components that courts test are whether (1) after the commencement of the case, the debtor continues to experience a negative cash flow, or alternatively, declining asset values; and, (2) is there any reasonable likelihood that the debtor, or some other party will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time.

*Western States, Inc.*, 2018 WL 627465 at *5

> •    *The Debtor has Negative Cash, Negative Net Income and Projections Indicate No Future Income*

29.      The Debtor only recently, on September 6, 2018, filed his May 2018 monthly operating report. Debtor's Reports for May, June and July 2018 (the "Reports") indicate the Debtor has total income of "$0.00" for each of those months. The May Report sets forth cash

profit in the amount of -$1,029.24. The June and July Reports disclose cash profit for each of those months in the respective amounts of -$2,961.19 and $-3,471.83. The Reports further indicate that projected income for each successive month will be $0.00 and projected expenses will exceed income. *See* Docket Nos. 66 and 67.

30.     The Debtor recently filed his Monthly Operating Report for August 2018 (the "August Report"). At first blush the August Report would appear to indicate the Debtor had monthly income in the amount of $60,400.66. However, that entire amount is attributable to the sale of certain property located in Converse, Wyoming. Otherwise, the Debtor continues to have no income and projects no income in the future and expenses in the amount of $2,626.45.

31.     Furthermore, the Statement of Revenue & Expenses attached to the July Report indicates that for January through July 2018 the Debtor shows negative net income in the amount of -$8,226.61. Accordingly, there is overall negative net income and net losses from January through July including in each of the reporting periods. "Negative cash flow and an inability to pay current expenses as they come due, satisfies the substantial loss or diminution of the estate for purposes of Section 1112(b). *Western States, Inc.*, 2018 WL 627465 at * 5.

- *Absence of a Reasonable Likelihood of Rehabilitation*

32.     Additionally, the Debtor cannot demonstrate a reasonable likelihood of Rehabilitation for the same reasons as set forth above. *Id.* In this case, the Debtor's financial success (or lack thereof) is based solely on the success of JHT as the Debtor's only source of income. However, at the evidentiary hearing on CB&T's motion to dismiss in the JHT Case held on August 16, 2018, the Debtor indicated that while JHT had positive cash flow, JHT was not paying its attorneys, its accountant and the IRS for quarterly taxes. Essentially, most, if not all of JHT's alleged income would be necessary to pay expenses in the JHT case.

33.     With regard to the IRS, the Debtor testified that in both 2016 and 2017, JHT had significant losses and owed the IRS approximately $400,000. The debtor further testified that John Hull was personally liable for the tax liability. Notwithstanding this significant debt for the two prior years, the Debtor admitted that he continues to not pay postpetition or quarterly taxes to the IRS.

34.     The Debtor further testified that JHT was paying many of the Debtor's personal expenses for utilities and for insurance and other bills related to the Debtor's personal aircraft. In response to questioning by CB&T's counsel, the Debtor admitted that he treats his individual bankruptcy case and the JHT case as essentially the same stating "John Hull [and] John Hull Trucking is all the same." *Transcript of Motion to Dismiss Hearing*, p. 128 ll. 3-10, attached as **Exhibit 13**. The Debtor's testimony at the motion to dismiss hearing in the JHT Case is further cause for conversion of this case to Chapter 7.

- *The Debtor's Case is Administratively Insolvent*

35.     Section 1112(b)(4) does not list administrative insolvency as cause to convert or dismiss a chapter 11 case. Nevertheless, a court may still consider this factor. *See AdBrite*, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003) *citing C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997)) ("Because the list of grounds for converting or dismissing a Chapter 11 case under § 1112(b) is illustrative, not exhaustive, the court may consider other grounds and use its equitable powers to reach an appropriate result."). Moreover, Bankruptcy Courts in this jurisdiction have converted cases from Chapter 11 to Chapter 7, in part, on the basis of administrative insolvency. *See, e.g., In re Bartmann*, 310 B.R. 663 (B.A.P. 10th Cir. 2004); *see also In re Desmond*, 331 B.R. 42, 44 (Bankr. D.N.H. 2005).

36.    The Reports indicate that the Debtor has paid professional fees in the nominal amount of $150.00.  *See* Docket Nos. 66 and 67.  The same Reports indicate the Debtor has had no income for June, July and August (apart from the sale of the Converse, Wyoming real property) while incurring living and other expenses during the same time.  Accordingly, the Debtor's bankruptcy case is likely administratively insolvent without any assurance of future income.  As in *Bartmann,* "maintaining the case in Chapter 11 would only result in further diminution of the estate, and in the absence of any evidence of a reasonable likelihood of rehabilitation, conversion was in the best interest of the creditors."  *In re Bartmann*, 2004 WL 1057662, at *6.

### E.    The Debtor has not Filed his 2017 Tax Returns and has Failed to Make any Postpetition Payments to the Internal Revenue Service

37.    At the recent evidentiary hearing in the JHT Case, the Debtor testified that he had not filed his 2017 tax returns, notwithstanding being in bankruptcy for close to 6 months.  The Debtor further testified that he has not paid the IRS any postpetition tax payments notwithstanding the fact that during 2016 and 2017, he owed the IRS approximately $400,000.  The Debtor's failure to file his 2017 tax returns and pay postpetition taxes is further cause for conversion of his case to Chapter 7 pursuant to 11 U.S.C.§ 1112(b)(4)(I).  *In re Angel Fire Water Co.*, 2015 WL 251570 (Bankr. D.N.M. Jan. 20, 2015) ("Debtor's failure to pay post-petition taxes for such an extended period is an additional cause for conversion.") (citing *In reKeeley and Grabanski Land Partnership*, 460 B.R. 520, 544 (Bankr. D.N.D. 2011) (undisputed evidence that debtor owed post-petition taxes was sufficient cause to dismiss or convert the case)).

### F.    The Debtor has Failed to File Timely Monthly Operating Reports

38.    The Debtor did not report his operations for the month of May 2018 until September 6, 2018.  The June 2018 report should have been filed by July 21, 2018, but was

untimely filed on August 21, 2018. "Filing late monthly operating reports does not "'satisfactorily explain or excuse failure to satisfy [a debtor's] duties as a chapter 11 debtor.' Filing catch-up reports is akin to locking the barn doors after the horses have already gotten out." *In re Western States, Inc.*, 2018 WL 627465 *4 (Bankr. D. Wyo. Jan. 30, 2018) (citing *In re Whetten*, 473 B.R. 380, 383 (Bankr. D. Colo. 2012); *see also Angel Fire Water Co.*, 2015 WL 251570 at *5. Moreover, "[a] debtor in bankruptcy must comply with the reporting requirements so that creditors and the court may determine whether the bankruptcy case is being properly administered while a debtor enjoys the benefits of the bankruptcy process." *In re Western States, Inc.*, 2018 WL 627465 *5. As noted above, the Reports that have been filed indicate negative cash, continuing losses and no future income. Cause exists to convert the Debtor's case to Chapter 7 pursuant to 11 U.S.C. § 1112(b)(4)(F).

**G.    Gross Mismanagement**

39.    At the recent evidentiary hearing in the JHT Case, the Debtor testified that he paid numerous personal bills from the JHT debtor in possession account, including bills for: utilities, aviation liability insurance, an airport hangar, and other expenses. *See Transcript*, pp. 93-103 attached hereto as Exhibit 13. As noted previously, Mr. Hull further testified that "John Hull [and] John Hull Trucking is all the same." The Debtor further paid his counsel in the JHT Case a postpetition retainer without court approval, used tax professionals that were not properly employed by the bankruptcy court and otherwise does not appropriately distinguish the Debtor's individual bankruptcy case with that of the JHT Case.

40.    It also appears that the Debtor is drawing monies from a related entity in order to pay personal and possibly JHT expenses. On June 1, 2018, the Debtor transferred $4,350 from a JV Lumber account to his individual debtor-in-possession account to pay individual bills. The

transfer is disclosed in the June Report as a "Owners Draw." *See June Report*, (Docket No. 67) p. 7 of 10. This is problematic from numerous respects. First, there is a lack of disclosure regarding this income on Schedule I. Second, it is questionable whether the "Owners Draw" is an undisclosed loan to the Debtor or something else. Moreover, JV Lumber owes CB&T approximately $1,500,000. Notwithstanding this fact, the Debtor is converting funds from a previously undisclosed JV Lumber account to pay bills in his individual bankruptcy case. As demonstrated by his own testimony, the Debtor has no understanding of how to operate as a fiduciary to his creditors in either his individual capacity or as the manager/member of JHT and instead commingles funds of JV Lumber, JHT and individually whenever funds are necessary.

     41.    Under similar circumstances, Courts have found gross mismanagement of the estate. *See In re Saraland, LLLP*, 2013 WL 1403338 (Bankr. S.D. Ga. Mar. 27, 2013) ("As set forth at the hearing, there has been gross mismanagement and a continuing loss and diminution of the bankruptcy estate, as the proper chapter 11 operating procedures have not been followed. Without Court or creditor approval, funds of Saraland have been commingled with and used to fund the separate chapter 11 cases of Paradise Farms, LLC . . . and the individual case of Lister Harrell . . . Saraland's managing member. Mr. Harrell testified and acknowledged and the operating reports confirm, Saraland's funds also have been utilized to pay for Mr. Harrell's personal expenses as well as the expenses of Paradise."); *see also In re Grasso*, 497 B.R. 448, 456 (Bankr. E.D. Pa. 2013) ("The Debtor's comingling of estate assets with the nondebtor entities constitutes evidence of gross mismanagement of the Debtor's estate and caused a continuing loss and diminution of the bankruptcy estate."). Cause also exists to convert the Debtor's case to Chapter 7 pursuant to 11 U.S.C. § 1112(b)(4)(B).

WHEREFORE, Central Bank & Trust respectfully requests that the Court enter its Order converting the Debtor's Chapter 11 case pursuant to 11 U.S.C. § 1112(b) and requests such other and further relief as the Court deems appropriate.

Respectfully submitted this 25th day of September, 2018.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

*s/ Chad S. Caby*
Chad S. Caby, Wyo. Reg. No. 7-5457
1200 17th Street, Suite 3000
Denver, CO 80202-5855
Phone:    303.623.9000
Fax:        303.623.9222
Email:    ccaby@lrrc.com

*Attorneys for Central Bank & Trust*